IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BECKY JANE LITTRELL                                           PLAINTIFF

V.                         NO. 09-5054

MICHAEL J. ASTRUE,
Commissioner of Social Security                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Becky Jane Littrell, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration, (Commissioner) denying his claims for a period of disability and disability insurance benefits under Title II of the Social Security Act (the Act) and Supplemental Security Income under Title XVI of the Act. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff applied for disability insurance benefits, as well as supplemental security income, on September 15, 2005, alleging an onset date of August 19, 2005. (Tr. 10, 72-78, 88-95, 79-87). Her claims were denied initially and upon reconsideration. (Tr. 24, 286-289, 23, 290). On June 19, 2007, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 291-322). On October 17, 2007, the ALJ issued an unfavorable decision, denying Plaintiff's disability claim. (Tr. 7-21).

In his written decision, the ALJ found that Plaintiff had the following severe impairments: bilateral rotator cuff tears; non-union of right foot fracture; and tendonitis of her right ankle, all of which were exacerbated by her chronic state of obesity. (Tr. 12). However, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In his decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to lift and carry twenty pounds occasionally and ten pounds frequently, to stand and/or walk for six hours in an eight hour workday, to sit for about six hours in an eight hour workday, and to push and/or pull within the above limitations. He also found that Plaintiff was limited to occasional overhead reaching. (Tr. 18). The ALJ concluded that Plaintiff could perform her past relevant work as an Index Specialist at J.B. Hunt Trucking (J.B. Hunt), thereby finding Plaintiff not disabled. (Tr. 20-21). On January 22, 2009, the Appeals Council denied Plaintiff's request for review, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 3-4A).

**Evidence Presented**

Plaintiff was born in 1974 and completed high school. (Tr. 294). In February of 2000, Plaintiff was discharged from a hospital with a diagnosis of pulmonary emboli associated with pulmonary hypertension. (Tr. 167A). Four years later, on September 1, 2004, Plaintiff presented herself to Dr. Jennifer Bingham, her family physician, and reported that she was needing to park in a handicap parking spot because of an ankle she fractured two years earlier and had bone spurs on both feet. (Tr. 165). On September 9, 2004, Plaintiff was reported as morbidly obese at 425 pounds at last weighing. (Tr. 143). On September 23, 2004, Plaintiff, who was then pregnant, went to Washington Regional Medical Center for a nutrition assessment, where the diagnosis was: morbid

obesity/pregnancy. (Tr. 146). During her pregnancy, Plaintiff actually lost weight due to her better diet, and Dr. Bingham's records reflected that she weighed 345 pounds on December 23, 2004. (Tr. 163).

Plaintiff worked for approximately ten years as a full-time employee as an Index Specialist at J.B. Hunt. (Tr. 80). She left full-time work because of her impairments, and began working in the cafeteria of Springdale Schools on a part-time, call-in basis, thinking that fewer hours would help alleviate some of the symptoms. (Tr. 317). However, she found that she could not stay on her ankle even at the part-time position, and quit the position in June of 2006, when her son was born. (Tr. 299). She thereafter did some part-time work for J.B. Hunt a few hours a week. (Tr. 302).

On September 14, 2005, Plaintiff reported to Dr. Bingham that she was really tired all of the time and hurt all over. Dr. Bingham assessed her with ankle pain, right and left shoulder pain, and hypothroidism. (Tr. 162). At that time, she was still working at the school cafeteria and Dr. Bingham advised Plaintiff that she needed to try to get medical disability due to the severe pain in her ankle and both shoulders. (Tr. 73, 162).

In a face-to-face interview with Plaintiff by a Social Security field officer, it was noted that Plaintiff had difficulty sitting and walking during the interview, and was crying as she sat down at the interviewer's desk. She also walked with a limp on her right side and appeared "very overweight." (Tr. 98). In her disability report, Plaintiff contended that she weighed 340 pounds, and that the illnesses that limited her ability to work were: pulmonary blood clots, mostly in her lungs and chest; asthma; obesity; right and left rotator cuffs needed surgery; bone spurs in both feet; left shoulder pain; right knee pain; PCOS disease; hyperinsulinism; back pain and cellulitis. (Tr,. 88-89). She further stated that she had trouble sitting for a long time and wearing regular shoes due

to the pain in both of her feet. She could not lift anything over her head or reach anything out in front of her. She had trouble walking and could not stand anything touching or pushing against her ankle. (Tr. 89). She was taking Actos, Advair Diskus, Chlotrimazole, Skelaxin, and Synthroid. (Tr. 93).

In her function report, Plaintiff stated that she arose daily at 4 A.M. to make her husband's breakfast and pack his lunch, cooked dinner and did the dishes and laundry and cared for her small child and a step-child. (Tr. 62). She stated that she swept, mopped, dusted, drove a car, shopped for groceries, bought clothes for the family and went to church weekly. (Tr. 64-65). Plaintiff alleged that she had pain somewhere all the time, always in both shoulders and arms, wrists at times, both knees, especially up and down stairs, both feet and ankles, legs, stomach and back. (Tr. 70). She stated that it was hard some days to pick her baby up out of her crib because of the pain in her shoulders and arms. (Tr. 71).

MRI's of both of Plaintiff's shoulders revealed tears in both rotator cuffs. (Tr. 172, 173). A MRI of Plaintiff's right ankle did not reveal a fracture, but was suggestive of a partial tear. (Tr. 174). On November 10, 2005, Dr. Mark Powell assessed Plaintiff with:

> right shoulder rotator cuff tear, retracted, but still repairable;
> left shoulder rotator cuff tear; and
> right ankle peroneal tendonitis.

(Tr. 182-183). Dr. Powell placed Plaintiff in a fracture boot and recommended surgery for her rotator cuff tears after her child was born. (Tr. 183). Plaintiff presented herself to Dr. Christopher A. Arnold, an orthopedic surgeon, on December 6, 2005, for a second opinion regarding her rotator cuff tears. He found that Plaintiff had rotator cuff tears, the right shoulder tear greater than the left. (Tr. 159).

Plaintiff next presented herself to Dr. Lloyd Trichell, a podiatrist, on December 28, 2005, regarding her right ankle, reporting that she had an ankle fracture in 2001. (Tr. 239). At that time, Plaintiff advised Dr. Trichell that she had applied for temporary disability, and he agreed with the application since she could not wear closed shoes or stand for any significant period of time without pain. (Tr. 239). On May 12, 2006, Plaintiff visited Dr. Trichell, complaining of pain to the top of the right foot. At that time, she was eight months pregnant and had avoided treatment because of the inability to have radiographs taken. (Tr. 238). An ultrasound of her right fifth metatarsal revealed no evidence of a fracture. Plaintiff was unable to walk without pain, producing an antalgic gait. (Tr. 238). Dr. Trichell placed her in a boot walker which allowed a normal gait, and advised her to only wear it when walking. (Tr. 238).

On June 20, 2006, Plaintiff reported to Dr. Bingham that her right foot pain was bothering her more than her shoulders, and that she wanted to take care of her ankle prior to her shoulders after her pregnancy. (Tr. 210). On June 27, 2006, Plaintiff gave birth to her second child. (Tr. 209). In a later disability report, Plaintiff complained that her right knee was getting worse and her right foot had additional damage. (Tr. 100). She stated that it was hard for her to brush her hair, fasten her underclothes and put on her shirt, coat and jacket. She also said that it was hard for her to stand for an extended period of time due to her varicose veins, bone spurs in both feet and a torn tendon in her right foot. (Tr. 103). She stated that she had a hard time in the shower, washing her hair or reaching for anything, especially over her head, lifting things away from her body, and picking up weight higher than her chest. (Tr. 104). A Social Security field officer noted that Plaintiff appeared very tired and in pain and walked with a terrible limp. (Tr. 107).

On October 11, 2006, Dr. Trichell noted that Plaintiff was ready for surgery on her right foot because she could no longer wear any kind of closed shoe. Dr. Trichell recommended a boot walker with non-weight bearing as much as possible. He also recommended a bone stimulator due to the location of the fracture, her diabetes, symptoms and obesity. (Tr. 237).

On January 10, 2007, Plaintiff reported to Dr. Bingham that she was having more problems with varicose veins, which was limiting her standing. (Tr. 224). Dr. Bingham told Plaintiff that she needed to not be on her feet for more than 45 minutes at a time, due to the varicose veins, and that she needed to sit at least 14-20 minutes. She also advised that long periods of sitting more than two hours would be bad for the distal varicose veins. (Tr. 224).

On January 22, 2007, Dr. Christopher A. Arnold performed rotator cuff surgery on Plaintiff's right shoulder. (Tr. 267-270). He reported that he was able to repair approximately 80% of it. (Tr. 268). A follow-up visit on February 22, 2007, found Plaintiff doing well and starting therapy. (Tr. 256).

On March 13, 2007, Dr. Trichell found that although there was clinical union of the right fifth metatarsal, he hesitated to allow weight bearing due to the patient's weight, diabetes and location of the fracture site. (Tr. 231). Plaintiff's post rotator cuff repair exam on April 5, 2007, revealed that it was getting better but still felt weak. Dr. Arnold noted that Plaintiff did have a foot nonunion and knee pain. (Tr. 255).

When Plaintiff visited Dr. Bingham on April 17, 2007, she asked the doctor about a drug named "Byetta," since a family member who had taken it had lost weight. Plaintiff was given a sample of Byetta and shown proper usage of the pen. (Tr. 244). Dr. Bingham discussed weight loss

with Plaintiff and encouraged Plaintiff to exercise twenty minutes a day, five times a week. (Tr. 245).

A Physical RFC Questionnaire was completed by Dr. Bingham on July 3, 2007. (Tr. 276-279). Dr. Bingham diagnosed Plaintiff with varicose veins, with a poor prognosis. (Tr. 276). Dr. Bingham noted that Plaintiff had pain in both legs due to varicose veins and the venous pressure of gravity. Dr. Bingham further found that:

> Plaintiff could not walk any city blocks without rest or severe pain;
> Plaintiff could sit fifteen minutes at one time before needing to get up;
> Plaintiff could stand fifteen minutes at one time before needing to sit down, walk around, etc.;
> Plaintiff could sit and stand/walk less than two hours in an eight hour workday and needed to include periods of walking around every thirty minutes for three minutes;
> Plaintiff could never lift and carry any weight due to the rotator cuff;
> Plaintiff could never twist, stoop, crouch, climb ladders, or climb stairs due to her knees; and
> Sitting and standing made increased venous pressure.

(Tr. 276-279).

On July 22, 2007, Dr. Trichell prepared a Physical RFC questionnaire. (Tr. 281-284). He diagnosed Plaintiff with a nonunion right fifth metatarsal, and his prognosis was a complete recovery. (Tr. 281). He noted that Plaintiff had been taken out of a boot walker and returned to shoes on June 27, 2007, and that her activity and symptoms would improve over the next two months. Dr. Trichell failed to complete the remainder of the questionnaire.

At the June 19, 2007 hearing held before the ALJ, Plaintiff stated that she took Advair inhaler and Byetta shots and that she had lost six pounds. She stated that she had varicose veins which had started to burst, had massive bruises all over and that they were very painful. (Tr. 303). Plaintiff stated that Dr. Bingham told her she did not want her sitting for too long a period of time - maybe two hours or so - and Dr. Trichell wanted her to not walk at all. (Tr. 304, 306). When asked what

the main things were that kept Plaintiff from working, she responded "mainly pain." (Tr. 307). She added that she also had limitations with walking and with her arms. (Tr. 307). She stated that she could not reach with both arms above her head. (Tr. 309).

Plaintiff stated that her work at J.B. Hunt required sitting and working a 10-key machine. She testified that she thought J.B. Hunt might take her back on a part time basis , depending on what she did, and that she liked working at J.B. Hunt. (Tr. 312-313).

The ALJ presented a hypothetical to the VE, asking her to assume the individual would be limited to a light exertional level, be on her feet six out of eight hours, be able to sit six out of eight hours, only occasionally do overhead work, only occasionally grasp objects, handle objects, finely manipulate objects and feel objects. He added the restrictions of not being on her feet for more than forty-five minutes at a time in one stretch, needing to then sit for about twenty minutes, and not sitting for more then two hours at a time, needing to then stand. He added that this person would have to be able to alternate sitting and standing. (Tr. 313). In response to this hypothetical, the VE stated there would not be any jobs the individual would be able to perform. (Tr. 314). The ALJ then proposed a second hypothetical to the VE, asking her to assume a hypothetical claimant was a younger individual and had the RFC to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk with normal breaks for a total of six out of eight hours, sit with normal breaks for a total of six out of eight hours, and to assume further that the person was limited to only occasional overhead work. (Tr. 315). The VE responded that "yes," Plaintiff could perform the job at J.B. Hunt. (Tr. 316).

**Discussion**

Plaintiff argues in her appeal brief that the ALJ erred in finding that Plaintiff's varicose veins did not constitute a severe impairment. The court recognizes that it is the Plaintiff's burden to establish that her impairment or combination of impairments are severe. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). However, this standard has been held to be a "de minimis standard." Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989). Plaintiff's treating physician, Dr. Jennifer Bingham, diagnosed Plaintiff with varicose veins, and Plaintiff testified at the hearing that her varicose veins had started to burst and that she had massive bruises all over, which were very painful. (Tr. 303). The ALJ totally discounted Dr. Bingham's opinions because of her inconsistent statements. However, Dr. Bingham's medical diagnosis of varicose veins was based upon her medical expertise as a physician, and Plaintiff testified regarding them and the pain they created. Although there was not any prior medical diagnosis of varicose veins by any physician, there was also not any medical evidence contradicting the diagnosis. Based upon the evidence of record, the court cannot say that Plaintiff's varicose veins and the pain caused by them were so slight that it was unlikely she would be found to be disabled even if her age, education and experience were taken into account. See Bowen v. Yuckert, 482 U.S. 137, 153 (1987). It is therefore the court's opinion that Plaintiff met her burden of proving that the varicose veins should have been considered a severe impairment.

Having concluded that Plaintiff's varicose veins constituted a severe impairment, the court finds it necessary to remand this matter for the ALJ to obtain a consultative examination, instructing the consultative examining physician to evaluate and address Plaintiff's varicose veins and to complete a Physical RFC Assessment. The court also instructs the ALJ to ask Dr. Trichell, the

podiatrist, to complete another Physical RFC Assessment, asking him to complete the entire questionnaire. The ALJ should also obtain a Physical RFC Assessment from Plaintiff's orthopedic surgeon, Dr. Christopher A. Arnold, who performed the rotator cuff surgery. Once all of the above assessments are received by the ALJ, he is instructed to re-evaluate Plaintiff's RFC in light of those assessments..

Based upon the foregoing, the undersigned reverses the decision of the ALJ and remands this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 8th day of March, 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE